UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                                                                    No.  07-CR-971-LTS-14

CHRISTOPHER MICHAEL COKE,

           Defendant.

-------------------------------------------------------x

### MEMORANDUM ORDER

The Court has received and reviewed Mr. Coke's 18 U.S.C. section 3582 motion for resentencing pursuant to retroactive U.S.S.G. Amendment 782 (docket entry no. 502 (the "Motion")), and the parties' subsequent briefing (docket entry nos. 503 (the "Gov. Mem."), 504 (the "Reply").)  Mr. Coke seeks a reduction of his sentence from 276 to 210 months of imprisonment.[1]  The Court has reviewed all of the submissions carefully and, for the foregoing reasons, grants Mr. Coke's request in part and reduces his consecutive sentence for Count Two to 22 months of imprisonment, for a total of 262 months' imprisonment.

### BACKGROUND

Underlying Offense Conduct

From at least the early 1990s until his arrest in June 2010, Mr. Coke led a criminal organization based in Jamaica known as both the "Presidential Click" and the "Shower Posse" (the "Organization").  (Gov. Mem. at 2.)  The Organization was based in Tivoli Gardens[2], a

---

[1]    Mr. Coke also moved, in the alternative, for compassionate release.  (Motion at 1.)  However, Mr. Coke failed to defend, and thus abandoned, this request in his Reply.

[2]    From its creation in 1965 until Mr. Coke's arrest in 2010, Tivoli Gardens was "a neighborhood of about 4,000 people buttressed against other political 'garrison

Kingston neighborhood that Mr. Coke policed with armed men; the Organization's members also lived in other parts of Jamaica as well as in the United States.  (Id. at 2.)  Mr. Coke inherited the leadership of Tivoli Gardens when he was just 23 years old, following the murder of his older brother and the mysterious death of his father in 1992.  (Motion at 2.)  The Organization engaged in a pattern of criminal activity, including narcotics trafficking, firearms trafficking, assault, and murder.  (Gov. Mem. at 2.)  From his headquarters in Kingston, Mr. Coke both directed and personally participated in the Organization's criminal activities in Jamaica and the United States.  (Id.)  During this time, Mr. Coke was involved in at least three murders, including an incident during which he killed a victim with a power saw for failure to pay a narcotics-related debt.  (Id.)

Charge, Guilty Plea, and Original Sentence

On August 31, 2011, Mr. Coke pled guilty to two counts related to racketeering pursuant to a plea agreement.  (Gov. Mem. at 1.)  Count One charged Mr. Coke with racketeering conspiracy, in violation of 18 U.S.C. section 1962(d), and Count Two charged him with conspiracy to commit assault in aid of racketeering, in violation of 18 U.S.C. sections 1959(a)(6) and 2.  (Id.)  The plea agreement specified that Mr. Coke faced a statutory maximum of 23 years' imprisonment, and the parties stipulated that his custodial sentencing range under the Guidelines would be 262 to 327 months without the statutory maximum, or 262 to 276 months with the statutory maximum.  (Id.)  In recommending a term of imprisonment equal to the statutory maximum in the Pre-Sentencing Report, the Probation Department opined that the

---

communities.'"  (Motion at 2.)  It was "the chief [Jamaican Labour Party ("JLP")] stronghold in West Kingston."  (Id.)  Mr. Coke represents that the political and historic conditions that gave rise to violence in garrison communities like Tivoli Gardens have "largely passed."  (Id. at 15.)

charges only "held [Mr. Coke] responsible for a fraction of the harm that he knowingly caused to numerous individuals and their families both in the United States and Jamaica." (Id. at 9.)

Mr. Coke appeared for sentencing before Judge Patterson (the "sentencing judge") on June 8, 2012. (Gov. Mem. at 3.) The sentencing judge adopted the Probation Department's Sentencing Guidelines calculation and determined that Mr. Coke's total offense level was 39 and his criminal history category was I. (Id.) After a lengthy discussion of the applicable sentencing factors, the sentencing judge sentenced Mr. Coke principally to the statutory maximum—240 months' imprisonment for Count One, followed consecutively by 36 months of imprisonment for Count Two, for a total of 276 months of imprisonment. (Id. at 4.)

Relevant Procedural History

In May 2016, Mr. Coke filed a motion requesting a reduction of his sentence under Amendment 782, which amended the Sentencing Guidelines to reduce the offense levels for certain crimes involving controlled substances by two points. (Docket entry no. 431.) The Court noted that the maximum benefit available under the Amendment, if the defendant qualified, would permit Mr. Coke's release by the year 2024. (Id.) Stating that, "[i]n exercising its discretion over whether to grant a reduction to a prisoner who qualifies under the revision, the court is required to consider the safety of the public, and may consider post-sentencing conduct that occurred after imposition of the term of imprisonment," the Court denied the motion without prejudice and instructed the defendant to submit any renewed motion "no earlier than the year 2022." (Id.)

Mr. Coke filed a timely appeal, and the Government moved, with the defendant's consent, for vacatur and remand to allow the Court to conduct the two-step inquiry that applies when ruling on Section 3582(c)(2) motions. (Id.) On October 24, 2017, the Second Circuit

granted the Government's motion and remanded the motion for further proceedings, directing that the Court determine whether the defendant was eligible for a sentence modification and, if so, the extent of the reduction authorized. (Id.) In October 2018, Mr. Coke requested leave to withdraw his request without prejudice and leave to re-submit for a decision at a time closer to his projected release date (docket entry no. 459), and the Court granted his request (docket entry no. 460). On October 30, 2023, the Mr. Coke filed a renewed motion for resentencing.

## DISCUSSION

Mr. Coke requests a reduction of his sentence to 210 months of imprisonment pursuant to 18 U.S.C. section 3582. Section 3582(c) provides for "a limited adjustment to an otherwise final sentence" following a "two-step approach." Dillon v. United States, 560 U.S. 817, 826-27 (2010). "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions . . . to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." Id. at 827. "At step two of the inquiry," if the defendant has been determined to be eligible, and the extent of his eligibility has been established, the Court must decide in light of the applicable Section 3553(a) factors whether to grant a reduction "in whole or in part under the particular circumstances of the case." Id. As to step one of the Section 3582 inquiry, the parties and the Court agree that Mr. Coke is eligible for a reduction in his sentence because (i) applying the amended Guidelines, Mr. Coke's total offense level is 37, resulting in an amended Guidelines range of 210 to 262 months, and (ii) Mr. Coke's aggregate original sentence of 276 months is higher than the bottom of the amended Guidelines range. (See Gov. Mem. at 8.) Therefore, only step two is in dispute.

The Court, having considered thoroughly the record in this case and the relevant statutory considerations, that the Section 3553(a) factors weigh in favor of a modest reduction of

Mr. Coke's sentence. As the Motion emphasizes, Mr. Coke's "post-sentencing conduct has been nothing short of exemplary." (Motion at 16.) Not only has Mr. Coke "never had an incident report or a disciplinary violation while in custody[,]" but he has also "completed over two dozen educational, self-enhancement and re-entry courses while at BOP, more than half of which he himself sought out apart from the standard BOP curricular offerings." (Id. at 16-17.) In one of those reentry courses, Mr. Coke determined that he would like to use his experiences "to be a social worker, to teach others about self-empowerment through skill training and literacy" or "be a motivational speaker to others especially to the delinquent youths." (Id. at 16.) The Government acknowledges "that the evidence of the defendant's rehabilitation makes it less likely he will commit another crime if released." (Gov. Mem. at 9.) Mr. Coke's rehabilitation, in other words, indicates that reduced needs for specific protection of the public from likely recidivist conduct (18 U.S.C. section 3553(a)(2)(B)-(C)) weigh in favor of granting his request.

That said, while Mr. Coke's post-sentencing conduct is exemplary, it is not sufficient to warrant the full reduction that Mr. Coke seeks. As reflected in the transcript of Mr. Coke's sentencing hearing, the sentencing judge considered the Section 3553(a) factors in determining the sentence imposed on June 8, 2012 (docket entry no. 335), and many of those factors remain unchanged. The nature and circumstances of his offenses remain very serious. Mr. Coke pled guilty to racketeering conspiracy and conspiracy to commit assault with a dangerous weapon in aid of racketeering. (Docket entry no. 388.) His conduct in connection with his offenses was particularly brutal: at the evidentiary hearing held in connection with his sentencing, the Government's witness testified that Mr. Coke dismembered and decapitated one victim with a power saw (docket entry no. 380 at 103-105) and killed two others with a small ax (id. at 108, 122). The sentencing judge concluded that a custodial sentence of 276 months—the

statutory maximum—was necessary to punish Mr. Coke adequately for this extremely dangerous conduct, protect the public, deter Mr. Coke and others from engaging in this kind of violent behavior, and promote respect for the law. This sentence reflected not only the nature of the offense, but Mr. Coke's role as the leader of the criminal organization, which distinguished him from his co-defendants and continues to warrant a more significant custodial sentence.

For the foregoing reasons, the Court reduces Mr. Coke's consecutive sentence for Count Two from 36 to 22 months of imprisonment, for a total of 262 months of imprisonment. This exercise of discretion, resentencing Mr. Coke at the top of the amended Guidelines, which now falls below the statutory maximum, recognizes both Mr. Coke's abstention from bad behavior in recent years and his proactive preparation to build the foundation necessary to support a radical change in his life in the community. Such recognition is balanced against the horrific crimes he committed, that harmed people in Jamaica and the United States alike, over a significant period of time. A lengthy term of imprisonment, at the top of the amended Guidelines range, will provide additional time for Mr. Coke to build on the successes he has achieved while in custody and to further prepare himself for the productive, peaceful life he plans upon his return to Jamaica.[3]

## CONCLUSION

For the foregoing reasons, the Court grants Mr. Coke's motion in part to the extent that his consecutive sentence for Count Two is reduced from 36 to 22 months of

---

[3]  The reality that Mr. Coke will return to Jamaica upon his release, rather than serve his term of supervised release with the support of Probation Department in the United States, further supports a longer custodial sentence than Mr. Coke seeks.

imprisonment, for a total of 262 months of imprisonment.  The Motion is denied in all other respects.  This Memorandum Order resolves docket entry number 502.

    SO ORDERED.

Dated: New York, New York
       April 12, 2024

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            Chief United States District Judge